IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SHAW, SR., | |
|     Petitioner, | No. CIV S-05-1506 MCE GGH P |
| vs. | |
| ROSANNE CAMPBELL, et al., | <u>ORDER AND</u> |
|     Respondent. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| _____ / | |

I. <u>Introduction</u>

    Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of numerous charges including kidnapping with intent to commit rape, forcible rape during the commission of a burglary, attempted murder and several lesser charges. His sentence of 25 years to life imprisonment was imposed pursuant to the "one strike" law of Cal. Penal Code § 667.61(a).

    On September 20, 2007, the court denied petitioner's ineffective assistance of counsel claim involving the lack of a drug expert in the order denying the request for an evidentiary hearing as to this claim. On March 18, 2008, the court recommended that the remaining claims be denied, but for the claim alleging ineffective assistance of counsel based on counsel's failure to renew attempts to have impeachment witnesses testify after the victim

testified that she did not engage in sex for drugs.  On May 28, 2008, the district court adopted these findings and recommendations.

On March 18, 2008, the court ordered an evidentiary hearing as to the remaining claim for ineffective assistance of counsel.  On August 5, 2008, this hearing was held.  On August 15, 2008, petitioner filed the pending motion to re-open the hearing.  On August 29, 2008, respondent filed a reply.  After considering the papers and counsel's argument at the September 18, 2008, hearing on this motion, this court has reconsidered its previous decision that the remaining claim warranted an evidentiary hearing.  For the following reasons, petitioner's motion to re-open the evidentiary hearing is denied and the court recommends that the remaining claim of ineffective assistance of counsel be denied.

II.  Discussion

*Anti-Terrorism and Effective Death Penalty Act (AEDPA)*

The AEDPA standards of review are set forth in the March 18, 2008, findings and recommendations.  The court reiterates here that the opinion of the California Court of Appeal, the last state court to issue a reasoned opinion addressing the remaining claim, is entitled to AEDPA deference.  Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

*Factual Background*[1]

The court will repeat the rendition of facts given by the Court of Appeal for trial, as those facts were accurate as to what took place at that time.  However, at the end of that recitation, the court will point out material inconsistencies in both the petitioner's and victim's pretrial versions.

/////

---

[1] The court repeats the factual background contained in the March 18, 2008, findings and recommendations.

The victim, Sherrie L., met defendant outside a bar sometime after closing and asked him for a cigarette. Defendant was drinking hard liquor and offered her some, which she declined. Earlier, about 8:00 or 9:00 p.m., the victim had had two glasses of wine. The victim and defendant were joined by two others, David R. and Bobbi C. The foursome left the area seeking a place to use methamphetamine. Along the way, defendant intimidated a person who approached the group asking for a cigarette. Also along the way, defendant and David talked about having robbed and beaten a person the previous night. Hearing the conversation, the victim was frightened. While walking, defendant told the victim, "You know what I want." Assuming defendant was proposing sex in exchange for drugs, the victim declined. Defendant said, "We'll see." After defendant and David obtained narcotics from someone behind a residence, David and Bobbi decided to leave. The victim did not want to remain with defendant but Bobbi told her she would be fine.

The victim followed defendant. When they reached some buildings, defendant wanted to go in a vacant building and use drugs but the victim declined to go inside. Defendant physically forced her to go inside a shed and once inside, tripped her. She fell and defendant landed on top, pinning her to the floor. He told her to take her pantyhose down and that they "were going to have sex." She wanted to use drugs first but defendant refused although he forced her to hold the wrapper with the drugs. Defendant proceeded to rape the victim. She asked defendant if he just liked having sex. Defendant became so angry he hit her face and threatened to sodomize and kill her. The victim started crying and defendant choked her until she was unconscious. When she regained consciousness, she started struggling thinking he was still choking her but he was gone. [Footnote 1.]

> [Footnote 1: When interviewed by officers, the victim claimed that when she regained consciousness, defendant was still in the shed and that she fought with him, scratching and hitting him, before she fled. She also did not mention anything about drugs.]

The victim fled the building, flagged down a truck, and went to the police station. About 4:00 or 4:30 a.m., the victim reported to an officer that she had been raped. The dispatcher and an officer described the victim as visibly shaken and crying. The victim feared being alone. The victim guided the officer to the shed where the rape occurred. Inside, the officer found the victim's purse, shoes and a disposable cigarette lighter. Later, another officer located one of the victim's missing false fingernails.

The victim had red marks around her neck. At the hospital, the victim was close to shock. A sexual assault examination revealed a "small linear tear in the area of the posterior fourchette, the lower portion of the vagina" which occurred within 12 to 24 hours. The

>examiner opined that the injury was consistent with nonconsensual sexual intercourse. The victim also had a "pink area on the cervical mucuosa," an "abnormal finding" and indicated "recent trauma."
>
>The parties stipulated that defendant did not have the owner's consent to enter the shed. When defendant was arrested and interviewed, he admitted meeting the victim, walking around with the victim and another couple, going into the shed and having sexual intercourse with the victim who he described as a "bar fly or a hooker." He claimed that he had consensual intercourse with the victim for which he paid $20. He denied that there had been a struggle, that he had choked the victim, or that he had threatened to kill the victim. After sexual intercourse, he left and the victim smoked what he thought was an illegal substance.
>
>Defendant did not testify at trial. Called by the defense, Bobbi admitted having walked around with the victim, David, and defendant, to find a place for defendant and the victim to stay. Bobbi and the victim waited in front of a house while David and defendant went behind the house. The victim waited in front of the house alone while Bobbi went behind the house as well. Bobbi denied telling the victim that she would be safe with defendant. Bobbi did not recall an incident where someone asked for a cigarette. Bobbi did not overhear defendant and David talking about beating another person the previous night. Bobbi pays no attention to conversations that do not involve her.
>
>Defendant's friend, Brooke B., noticed no scratches or bruises on defendant's body on the day he was arrested. Brooke had declined defendant's invitation for a date the evening prior to the incident.
>
>The victim's acquaintance after-the-fact, Jason T., tried to convince the victim to change her story because he did not want to see anyone convicted of rape. Jason told a defense investigator that the victim claimed she agreed to exchange sex for drugs and had consented to sexual intercourse but that it "got weird."

Amended Petition, Exhibit 11, pp. 1-2.

In important particulars, the victim never told the investigating officer that she and petitioner were initially engaged in a search for drugs with petitioner and others for later partying. Amended Petition, Exhibit 4 (Cummings Police Report). She testified to such in the preliminary examination and at trial. We know from the previous evidentiary hearing proceedings that the victim was untruthful/inaccurate about how much alcohol she had imbibed prior to her encounter with petitioner because of the amount of alcohol in her system at 8:00 a.m. the next morning. At

4

1  trial, the victim testified that petitioner tripped her, forced her to the ground, and immediately
2  thereafter, engaged in the rape. RT 37. She also testified, however, that *she* asked if they could
3  take drugs before petitioner continued with his way prior to vaginal entry. RT 38. At the
4  preliminary examination, the victim testified that she was asked to lay down; petitioner had
5  attempted to pay her with drugs prior to the forceful rape, that she did not want any but she took
6  the bag of drugs nevertheless. RT (Preliminary Ex) 17-18. In the police report (Cummings), the
7  victim stated that petitioner was present when she regained consciousness (petitioner having
8  choked her), and still engaged in the rape; he ejaculated after she regained consciousness. The
9  victim struggled with petitioner at this time. At preliminary examination, the victim stated that
10  when she regained consciousness, petitioner was not there. RT (Preliminary Ex) 21. At trial,
11  petitioner was again there – maybe, but not when she opened her eyes. RT 41. She thought
12  petitioner may have ejaculated when she was unconscious. RT 125.

13  Petitioner did not testify at trial. Nevertheless, he told Officer Cummings, in fact
14  he was adamant, that he did not use drugs. Petitioner stated that he told the victim such as well,
15  and told her he was just looking for a good time, "sex straight up." In this habeas proceeding,
16  petitioner asserts that he was engaging in a sex for drugs transaction – with petitioner,
17  presumably, supplying the drugs he was adamant about never using. Moreover, petitioner never
18  claimed to the officer that he desired to exchange drugs for sex – he only mentioned to that
19  officer that he gave the victim $20.00. He denied ever physically abusing the victim at any time;
20  he now concedes that he did so when after the sex event, they argued about payment.

21  The apparent first mention in the court records of an alleged transaction of sex for
22  drugs was by one referenced by the Court of Appeal as "Jason T" who was an after-the-fact
23  acquaintance of the victim; Jason stated that the victim had agreed to exchange drugs for sex, but
24  then it got "weird." Other than Jason's belief that the rape charge should not have been pursued
25  by the victim, there does not appear to be any reason why Jason would have made up this
26  statement.

*Legal Standard for Ineffective Assistance of Counsel*

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690, 104 S. Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id., 104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052. Thus, even when a court is presented with an ineffective-assistance claim not subject to §

> 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. See Williams, supra, at 411, 65 S. Ct. 363.[2] Rather, he must show that the [ ]Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-699, 122 S. Ct. 1843,1852 (2002).

*Opinion of California Court of Appeal*

Petitioner argues that his counsel was ineffective for failing to renew his attempts to have the impeachment witnesses testify after the victim testified that she did not engage in sex for drugs. In a related claim, which this court has previously denied, petitioner argued that the trial court's exclusion of his witnesses who would have testified to the victim's previous attempts to seeks drugs in exchange for sex violated his constitutional rights. The California Court of Appeal's discussion of these claims is intertwined so it will set forth in its entirety below:

> Evidence the Victim Engaged in Prostitution for Drugs
>
> Defendant contends the trial court "abused its discretion and violated [defendant's] due process rights under the United States Constitution when it refused to hold a hearing on [defendant's] Evidence Code section 782 motion and excluded evidence that the victim had participated in acts of prostitution, and that she had exchanged sex for drugs on a number of occasions." We disagree.
>
> A
>
> Background
>
> At the start of the trial, defendant presented a written motion to admit evidence the victim was a prostitute and "has exchanged sex for drugs on previous occasions with several different men, or offered to exchange sex for drugs with different men." The defense contended this evidence was relevant to the victim's credibility. According to the declaration submitted in support of the motion, one

---

[2] This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477, 65 S. Ct. 363 (1945).

7

of the proposed witnesses would testify he had given the victim drugs on numerous occasions, and the victim had offered to have sex with him for drugs, but the witness declined those invitations. The second witness would testify the victim offered to have sex with him in exchange for money or drugs. The third witness would testify that a month prior to the rape, he and the victim agreed to have sex in exchange for "half a 1/16th of methamphetamine" and that they had sex. The defense argued these acts constitute prostitution which is a crime of moral turpitude and relevant to the victim's credibility under People v. Wheeler (1992) 4 Cal.4th 284, 297, footnote 7. The defense also argued the victim's credibility was at issue because she gave "two slightly different version[s]" of the crime to the police on the day she reported it to law enforcement.

The trial court denied defendant's motion. The trial court found defendant's offer of proof insufficient to require an evidentiary hearing as to any of the witnesses defendant intended to offer. The court found the testimony about the victim's offers to have sex for drugs was "tenuous at best." The court went on, "you also have the preliminary hearing testimony wherein the conduct of the victim immediately before arriving at the Marysville Police Department, ... and at the hospital is consistent with her versions of events. [¶] Given the tenuous nature of the offer of proof, the Court finds that the probative value is minimal, the prejudicial effect would be great." The court excluded the evidence.

B

Discussion

The statute applicable to admission of a victim's other sexual conduct is Evidence Code section 1103, subdivision (c)(1). Under this subdivision, "evidence of specific instances of the complaining witness' sexual conduct ... is not admissible by the defendant in order to prove consent by the complaining witness." Thus, "[s]ection 1103, subdivision (c), provides that a defendant cannot introduce opinion evidence, reputation evidence, and evidence of specific instances of the alleged victim's previous sexual conduct with persons other than the defendant to prove the victim consented to the sexual acts alleged. In adopting this section the Legislature recognized that evidence of the alleged victim's consensual sexual activities with others has little relevance to whether consent was given in a particular instance." (People v. Chandler (1997) 56 Cal.App.4th 703, 707, fn. omitted.) This restriction on admissible evidence does not deny a defendant the due process right of a fair trial. (People v. Blackburn (1976) 56 Cal.App.3d 685, 690.) It "no more deprives a defendant of a fair trial than do the rules of evidence barring hearsay, opinion evidence, and privileged communications." ( Ibid.)

Evidence Code section 1103 contains an exception allowing this evidence to be admitted when it is relevant to the credibility of the complaining witness. "Nothing in this subdivision shall be construed to make inadmissible any evidence offered to attack the credibility of the complaining witness as provided in Section 782." (Evid.Code, § 1103, subd. (c)(5).)

We thus turn to Evidence Code section 782 which provides in relevant part: "(a) In any prosecution under Section 261 ... of the Penal Code, ... if evidence of sexual conduct of the complaining witness is offered to attack the credibility of

8

the complaining witness under Section 780, the following procedure shall be followed: [¶] (1) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness. [¶] (2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated. [¶] (3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant. [¶] (4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant pursuant to Section 780, and is not inadmissible pursuant to Section 352 of this code, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court."

"Because the victim's credibility is almost always at issue in sexual assault cases, Evidence Code section 782 specifies a procedure requiring an in camera review of the proffered evidence to diminish the potential abuse of section 1103, subdivision (c)(4) [now (c)(5) ]. The defense may offer evidence of the victim's sexual conduct to attack the victim's credibility if the trial judge concludes following the hearing that the prejudicial and other effects enumerated in Evidence Code section 352 are substantially outweighed by the probative value of the impeaching evidence." (People v. Chandler, supra, 56 Cal.App.4th at pp. 707-708, fn. omitted.) "By narrowly exercising the discretion conferred upon the trial court in this screening process, California courts have not allowed the credibility exception in the rape shield statutes to result in an undermining of the legislative intent to limit public exposure of the victim's prior sexual history. [Citations.] Thus, the credibility exception has been utilized sparingly, most often in cases where the victim's prior sexual history is one of prostitution ." ( Id. at p. 708.)

"Read as a whole, [Evidence Code section 782] empowers the trial judge first to accept the offer of proof as true. He then determines whether, if the evidence is as the defendant claims, it is relevant and if relevant whether its probative value is outweighed by the probability of undue prejudice or the undue consumption of trial time. (Evid.Code, § 352.) Only if the judge determines both questions in favor of admissibility is the offer of proof 'sufficient.' Only if it is 'sufficient' is the trial court required to conduct the hearing to determine if the offer truly recites what the evidence will be." (People v. Blackburn, supra, 56 Cal.App.3d at pp. 691-692.)

Evidence Code section 352 provides the trial court with discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

We review the trial court's ruling in denying the admission of this evidence for an abuse of discretion. (People v. Chandler, supra, 56 Cal.App.4th at p. 711.) We

will not disturb a court's exercise of its discretion " except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (People v. Jordan (1986) 42 Cal.3d 308, 316.)

As described in People v. Rioz (1984) 161 Cal.App.3d 905, 916, "It is significant that the express provisions of Evidence Code section 782 vest broad discretion in the trial court to weigh the defendant's proffered evidence, prior to its submission to the jury, and to resolve the conflicting interests of the complaining witness and the defendant. Initially, the trial court need not even hold a hearing unless it first determines that the defendant's sworn offer of proof is sufficient. Moreover, even after a hearing outside the presence of the jury at which the complaining witness is questioned about the defendant's offer of proof, the statute specifically reaffirms the trial court's discretion, pursuant to Evidence Code section 352, to exclude relevant evidence which is more prejudicial than probative."

Turning to the evidence proffered here, we conclude the trial court did not abuse its discretion. The evidence consisted of three witnesses, two of whom would claim the victim "offered" to exchange sexual acts for drugs, but fail to demonstrate any consummated transactions; one of whom would testify the victim actually engaged in sex after she agreed to a sex-for-drugs exchange without revealing whether the victim actually took or received drugs after engaging in sexual acts. The testimony of the first two witnesses is easily dismissed. The unconsummated offer to do something is not the same as actually doing it. In light of this, the testimony of the first two witnesses has no probative value at all.

The proffered testimony of the third witness provides some probative value. However, we conclude the trial court did not abuse its discretion in excluding this evidence.

The undisputed corroborative evidence concerning this crime-the tearing of the victim's vagina, the loss of her artificial fingernails, the bruises to her neck, her demeanor and mannerisms when she reported the crime and underwent a medical examination-all strongly corroborate her statement this was a rape. The injuries suffered by the victim are wholly inconsistent with the defendant's offer of proof. The victim testified she told the defendant she would not have sex with defendant in exchange for drugs. The trial court did not abuse its discretion in accepting the evidence in the proffer as true, concluding it was not sufficient to hold a hearing to cross-examine the victim on this subject and excluding this evidence under Evidence Code section 352. (People v. Rioz, supra, 161 Cal.App.3d at p. 916 [see hypothetical tracking these identical facts].)

Importantly, even if the victim was a prostitute, or she chose to accept drugs as payment for her trade, this says little about her desire to consent to have sex with this defendant on this night-the sole issue in this trial-in light of the nature of the injuries suffered. We believe the trial court could properly conclude any slight probative value was substantially outweighed by the prejudicial effect of the evidence. We, thus, cannot conclude the trial court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.

C

Ineffective Assistance of Counsel Claim for Failing to Move to Admit Sexual Conduct Evidence Later

Defendant argues his trial counsel was ineffective when he failed to move the court to allow him to present evidence the victim exchanged sex for drugs to impeach the victim's credibility after she testified. We disagree.

"To establish constitutionally ineffective assistance of counsel under either the state or federal constitutional right to counsel, appellant must demonstrate (1) that his attorney's performance fell below an objective level of reasonableness, i.e., that counsel's performance was not within an objective level of reasonableness and thus did not meet the standard to be expected of a reasonably competent attorney, and (2) that he suffered prejudice as a result of that failure. Prejudice is established if there is a reasonable probability that, absent counsel's errors, the result would have been different." (People v. Coddington (2000) 23 Cal.4th 529, 651-652, overruled on other grounds, Price v. Superior Court (2001) 25 Cal.4th 1046, 1069, fn. 13.) "In any assessment of trial counsel's conduct of a criminal defense we are mindful of the admonition of the United States Supreme Court that we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' [Citation.] The burden is on an appellant who challenges the competence of his or her trial counsel to overcome the presumption that counsel's conduct is within the range of reasonably professional assistance." (Coddington, at p. 652.)

Here, defendant asserts his attorney should have called three witnesses to testify the victim was a prostitute and offered to perform sexual acts in exchange for drugs after the victim testified. Specifically, the victim testified that when defendant told her " 'you know what I want' " she told him to keep his drugs because " 'I d[o]n't do that for dope.' " We reject this claim.

As we have already demonstrated, the trial court did not abuse its discretion in finding this evidence inadmissible under Evidence Code section 1103, subdivision (c). (See part IA, ante.) Defense counsel could have reasonably concluded the victim's testimony would not alter the trial court's prior conclusion. Thus, counsel's determination not to seek to admit inadmissible evidence does not constitute ineffective assistance of counsel.

Respondent's Lodged Document 1, pp. 7-16.

*Analysis*

Petitioner's trial counsel did not wish to have the denial of the in limine motion as the last word on the matter. He pressed the judge to keep the possibility of calling the "sex for drugs" witnesses in case the circumstances at trial presented a credibility matter.

11

|   |   |
|---|---|
| 1 | Mr. Prather: Your Honor, it is denied with prejudice or without prejudice?  My concern is– |
| 2 | The Court: You always–obviously would always have the right to raise it again during trial. |
| 3 | Mr. Prather: Thank you. |
|   | The Court: If facts were sufficient to justify that. |
| 4 | Mr. Prather: Thank you, your Honor.  That's what I was looking for. |

Petitioner's Exhibit 18, p. 7.

The trial judge addressed the matter the first day of trial, reaffirming his previous ruling and indicating that should defense counsel think circumstances had changed, he would have to move for a hearing outside the presence of the jury.  RT 3, 13.  Again counsel emphasized his need to bring to the court's attention a renewed motion to have the "sex for drugs" witnesses testify if circumstances so warranted.

> Mr. Prather: Yes.  And I understand that, your Honor.  One question, though, if, during the course of the trial, if–if a response by a question asked by Mr. Enos opens the door–
> The Court: We all–
> Mr. Prather:  –in whatever way–
> The Court: We all run the risk, when we practice law, of opening doors we never wanted to open.
> Mr. Prather: Okay.
> The Court: We'd deal with that.

RT at 14.

At trial, the victim testified that the plan that evening, after she had met petitioner outside of the "Playroom," was "to do some methamphetamines."  RT at 27.  On the way to this place to do methamphetamine, wherever it was going to be, the victim became aware of the "real reason" she was accompanying petitioner:

> Q. [Prosecutor]: At some point during this walk did the subject of sex come up?
> A [The Victim]: Yes.
> Q: Can you describe that for us?
> A: David said something like, "You know what I want." And I stepped off the street corner with–as I knew of her as Petra, and said, "Well, if you want–if you want sex for dope," I said, "then I'd just as soon you keep your dope because I–I–I didn't–I don't do that for dope."

RT at 30.

The answer was read back to the jury.

12

Petitioner now argues that his counsel was ineffective for failing to move the court to reopen the matter of calling the "sex for drugs" witnesses based on the victim's testimony quoted above.

In the March 18, 2008, order granting petitioner's request for an evidentiary hearing as to this claim, this court stated that counsel was looking for testimony precisely as that given by the victim to base a renewed motion to call the "sex for drugs" witnesses. This court stated that the victim's testimony that it was her life's code that she did not do sex for dope was entirely inconsistent with her actual practice, if the defense witnesses were to be believed. The court concluded that an evidentiary was warranted to hear the "sex for drugs" witnesses in order to evaluate both prongs of the Strickland analysis. At the evidentiary hearing, one of the "sex for drugs" witnesses testified.

As discussed above, the California Court of Appeal found that the victim testified that "she told the defendant she would not have sex with defendant in exchange for drugs." Respondent's Lodged Document 1, p. 14. In other words, the California Court of Appeal found that the victim was not testifying as to her life's code, but as to what she told defendant *that night* regarding whether she would have sex with him for drugs.

In addressing petitioner's motion for a new trial, the Superior Court made a similar finding:

> Third, failure to call impeachment witnesses, including renewal of the 782 motion. Ms. Luster's testimony at trial in response to a question, quoting from page 18, beginning on page 18, beginning on line 16, "At some point during this walk did the subject of sex come up?
>
> Answer: Yes.
> Question: Can you describe that for us?
> Answer: David said something like 'You know what I want.' And I stepped off the street corner with–as I knew of her–Petra and said 'Well, if you want–if you want sex for dope,' I said, 'then I'd just as soon you keep your dope because I–I–I didn't–I don't do that for dope.'
>
> Mr. Enos' comment that that would be collateral impeachment, I'm not sure that's necessarily the proper word. I'm not sure that it was impeachable because Ms. Luster was not testifying at trial, that quote, "I don't do sex for dope." She was

        repeating what she had said at an earlier time. If a request had been made for a limiting instruction, the Court no doubt would have given one at that point.

RT at 740.

In re-reviewing the record, this court has reconsidered its previous order addressing this claim. In particular, the court has carefully reviewed the victim's testimony quoted above. After this review, the court finds that the state appellate court's finding that the victim was testifying as to what she told defendant that night, as opposed to describing her general practice, was not an unreasonable interpretation of her testimony. The state appellate court's conclusion that defense counsel was not ineffective for seeking to renew his motion for the "sex for drugs" witnesses because he could have reasonably concluded that the victim's testimony would not have altered the trial court's prior conclusion was not an unreasonable application of clearly established Supreme Court authority. Had counsel renewed the motion, it most likely would have been denied because, as interpreted by the Superior Court and California Court of Appeal, the victim testified regarding what she told petitioner and not as to her general practice.

While this court's earlier interpretation of the victim's testimony was also not unreasonable, the court must give AEDPA deference to the state court where its interpretation of the record, although different, is not unreasonable. Accordingly, this claim should be denied.

Because the court finds that petitioner's claim should be denied, it need not consider the testimony from the evidentiary hearing or petitioner's motion to re-open the evidentiary hearing. The court also need not consider respondent's motion for clarification of exhibits admitted at the hearing.

Accordingly, IT IS HEREBY ORDERED that petitioner's motion to re-open the evidentiary hearing (no. 78) and respondent's motion for clarification (no. 80) are denied as unnecessary;

\\\\\

IT IS HEREBY RECOMMENDED that petitioner's claim alleging ineffective assistance of counsel based on counsel's failure to renew attempts to have impeachment witnesses testify after the victim testified that she did not engage in sex for drugs be denied, and all other claims be denied, and judgment be entered.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/25/08

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

shaw.157